W. H. BARNES, Appellant, v. JOSEPH RAWLINGS, Respondent.

St. Louis Court of Appeals, February 13, 1900.

1. **Replevin: SALE: NOTICE: SUBSEQUENT PURCHASER PROTECTED.** The property replevied had been sold to Walker by Barnes for a price to be paid in installments, with the understanding with Walker that the "machinery" should "stand good" for the deferred payments, yet as no mortgage was given to secure the purchase money, and as defendant acted fairly in his purchase of Walker he was not charged with any equities between Walker and Barnes, the original vendor.

2. ——: ——: ——: ——: **STATUTORY REQUIREMENTS NECESSARY.** If the original vendor desires to subject the property sold to the payment of the purchase price, he must comply with the statute, and if he does not, he will not be protected against a *bona fide* subsequent purchaser of said property.

BIGGS, J., DISSENTS.

3. ——: ——: ——: **GOOD FAITH FOR THE JURY.** The question of defendant's good faith in making the purchase, should have been submitted to, the jury.

Appeal from the Audrain Circuit Court.—*Hon. Elliott M. Hughes*, Judge.

AFFIRMED.

*H. S. Booth, Fry & Clay* for appellant.

The preparatory instruction at the close of the case was error. As stated above, defendant acquired possession of the property with knowledge of the terms of the contract between plaintiff and Walker. If it was a sale of the property from plaintiff to Walker, the property was held by Mr. Walker subject to the lien for the purchase price, and it was a fact for the jury whether defendant did purchase the property of Walker; whether he was the owner of it and whether he was an innocent purchaser for value without notice of the existence of plaintiff's claim for the purchase money. R. S. 1889, sec. 4114. There is no doubt the claimed purchase by defendant was fraudulent and he was claiming to hold the property to assist Walker in defrauding plaintiff. These were issues for the jury. Herboth v. Gaal, 47 Mo. App. 255. This case was a replevin suit and direct in point. Oil Co. v. Drug Co., 74 Mo. App. 446. The present case comes under section 7489, Revised Statutes 1889. In such case, the judgment shall be against the plaintiff and his sureties, that he return the property taken, or pay the value so assessed, at the election of the defendant and also, pay the damages assessed for the taking and detention of the property and costs of suits. R. S. 1889, sec. 7490. The judgment should have been that plaintiff return the property taken or pay the value assessed at the election of defendant.

*George Robertson* for respondent.

There was no conditional sale from plaintiff to Walker, as alleged by appellant, by virtue of which title to the property was to remain in plaintiff until same was paid for, and plaintiff has failed utterly in showing that defendant, Rawlings, had any knowledge thereof. While plaintiff could have protected

himself by section 5180, Revised Statutes 1889, he neglected so to do. Plaintiff's own testimony, as found in bill of exceptions, pages 6 and 7, shows that no conditional sale was ever communicated to the respondent. He was a purchaser in good faith without notice and for value. There was no evidence showing that there was a conditional sale or that defendant was familiar with or had notice of plaintiff's title or contract with Walker. Hence plaintiff can not recover. Revised Statutes 1889, sec. 5180; Barnes v. Rawlings, 74 Mo. App. 535. There was no evidence to sustain an issue and the case was properly taken from the jury. There is absolutely no evidence tending to show that the defendant had any knowledge of the conditional sale of plaintiff to Walker or that there was any conditional sale. When the evidence is insufficient in law to support a verdict, an instruction in the nature of a demurrer to the evidence should be given. Hyde v. Railroad, 110 Mo. 272.

BOND, J.—This is the second appeal in this case (74 Mo. App. 531). The question involved is the title to a separator, engine, water tank, straw stacker, saw mill, log wagon, valued at $400, all of which plaintiff replevied from defendant. The defendant's answer set up title in himself and a third party, and demanded a return of the property. There was a verdict and judgment for defendant, from which plaintiff appealed.

It is insisted that the evidence did not show any sale by plaintiff of the property in dispute, but simply a letting to hire. As to the contract by which plaintiff parted with the property to one Walker, who subsequently sold it to defendant and one Snell, the following is plaintiff's testimony:

"Q. State to the jury what contract you made with Walker in August, 1894, about the property? A. Well, he took hold of it in this way: He was to take this machinery

and run it and keep up the expenses and allow himself $2 a day and what he made outside of that was to come to me as payment on the property, and the price set on this machinery was $650 and interest on $450 of it, the machinery to be good to me for my money.    That was the contract between me and Walker.

"Q.    Well how long had you owned this property at that time?    A.    I had owned it about four or five years; that is since it fell into my hands.    Of course, it was second-hand property when I got hold of it.    Three or four owned it before I got hold of it.    It fell into my hands by me being on a bad note with a man; that is the way it fell into my hands.

"Q.    I will change it then.    What conversation did you have with Joe Rawlings about it?    A.    I never had any at all; no, sir, at that time.

"Q.    At any time?    A.    Well, before I taken possession of the property (by replevin) I went to Mr. Rawlings and asked him if he had bought it and he said he had bought a half interest in it and I asked him what he paid for it, and he said he paid $335, and then I asked him if he did not know that Walker had not paid me and he said no he did not know it until after he had bought it, and then I asked him if he remembered the conversation between me and him had out at the barn; we was close by the barn; that was in the spring or winter, but I do not remember just the time, when he had asked me if Walker had paid me and I told him he had not, and he up and says:    I did ask Walker if the thing was clear and he said Walker asked him what he meant, and he said: I mean have you paid Barnes, and he says: No, I have not, and he says:    I did not want to give myself any trouble about it and Walker says:    I will stand between you and Mr. Barnes.    That was the words that passed.    Mr. Crump was present at the time."

Barnes v. Rawlings.

And further: "I have been paid $31 by Walker."

On cross-examination Barnes testified further: 'I sold this property to Walker in 1894, and at that time it was worth $650, and it was worth at the time I took it back in the writ, about $75 or $100 less. Rawlings told me that he paid $335 for half interest."

The fair legal intendment of the foregoing testimony is, that Barnes sold the property to Walker in the first instance for a price to be paid in installments, with an understanding with Walker that the "machinery" should "stand good" for the deferred payments. There is nothing in plaintiff's testimony which shows that he reserved the title to the property in himself until the full payment of the purchase price. But if such a deduction could be drawn, still the foregoing testimony wholly fails to show that the defendant, who was a subsequent purchaser, knew that his vendor had agreed that the original vendor might retain the title to the property in question. All that plaintiff's testimony shows on this point is that defendant was informed by his vendor (Walker) that he, Walker, had not fully paid for the property which he sold to defendant. Mere notice of this fact was not sufficient to charge defendant with any equities between Walker and the original vendor, for the reason that defendant might well have understood consistently with this information that Walker had bought the property on a credit, and that it was not charged in any way with payment of the price which Walker had agreed to give, but that he as such owner had a good right to transfer the title. This being the extent which the evidence showed the defendant was informed as to the previous dealings of his vendor with the property in question, and there being no record of any agreement between the former owners of the retention of title to the property or a mortgage thereof to secure the purchase price, it is clear that defendant took it free from any such incumbrance. R. S.

1899, sec. 3412. The trial court did not therefore err in its conclusion that under the evidence on the present trial the purchase of the property by the present defendant did not subject him to the equities which plaintiff might have enforced against the first buyer.

The judgment in this case is therefore affirmed. Judge *Bland* concurs; Judge *Biggs* dissents.

### DISSENTING OPINION.

BIGGS, J.—I am of the opinion that there is substantial evidence that the defendant bought the machine from Walker with knowledge of the conditions of the sale between plaintiff and Walker. For this reason I think that the circuit court committed prejudicial error when it peremptorily instructed the jury that the plaintiff was not entitled to the possession of the property. Yeager, a witness for plaintiff testified, that Walker sent him to Rawlings to negotiate the sale of one-half interest in the machine. Concerning this interview the witness said: "Q. What passed between you? A. I asked him what he was going to do about buying a half interest in that threshing machine, and he said he did not know, hardly, what to do about it, said he had about come to the conclusion not to buy it unless he could get in like Mr. Walker. He said if he would go and buy a half interest in the machine and pay his money for it and then Walker would run it a year or two and if he did not pay for it he might have some trouble about it, Barnes might come and take it away from him. He said he had about made up his mind not to buy unless he got in like Walker was.

"Q. Did he say anything further about how Mr. Walker had it? A. No, sir, he knew how Mr. Walker had it. Q. How do you know?

"Defendant objected, court sustained the objection and plaintiff excepted at the time and saved his exceptions.

"Court:    What else did he say, if anything?    A.    He said that Mr. Walker had not paid but very little on it.   ·He said that he had paid $31 ·or $33, I would not say for certain which, and that was all he had paid.    He said that if he bought and paid for his half interest Mr. Walker might run it a year or two and he would have trouble, and Mr. Barnes would take it away from him."

Under the testimony of Yaeger and of plaintiff I think the question of good faith of defendant in making the purchase ought to have been submitted to the jury.